| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | C/M |
| MELVINA LAKE,<br><br>                  Plaintiff,<br><br>              - against -<br><br>THE ROYSTER GROUP, INC.,<br><br>                  Defendant. | **MEMORANDUM<br>DECISION AND ORDER**<br><br>17 Civ. 2311 (BMC)(RER) |

**COGAN**, District Judge.

By Memorandum Decision and Order dated April 26, 2017, familiarity with which is assumed, this Court dismissed plaintiff's employment discrimination complaint with leave to amend. The Court determined that there were no factual allegations showing that plaintiff, because of her membership in a protected class, was a victim of the kind of discrimination prohibited by the various federal statutes that she cited. She has filed a 58-page handwritten amended complaint that still does not satisfy the pleading requirements discussed in this Court's prior Order. Although plaintiff asserts that she has a Master's Degree in social work, the handwriting of the document she has submitted is so illegible and the structure is so incoherent that I cannot discern a claim for relief.

The most useful part of plaintiff's amended complaint is the annexation of her termination letter, as it refers to some background facts and gives me at least part of her former employer's perspective. Pursuant to that letter, it appears that defendant provides some kind of contract employee services to the federal government, particularly, in this instance, the CDC. The termination letter states as follows:

Your employment is terminated for cause as a result of a series of complaints and information received by the government that they believe creates a hostile work environment and prevents you from being a good fit in accordance with the contract. The government has a strict policy against disruptive behavior that impacts daily operations of the CDC facility. Therefore, they have instituted a directive for your removal. This decision was based on concerns that the Government has, which negatively impact your ability to be successful in your role as a team member of the Care Ambassador team.

Beyond this, the few factual allegations that I can glean from this pleading are as follows:

1. Plaintiff was a 64-year-old African-American employee who worked for defendant for about six months.

2. There is a "program manager" named William Klein (I am not at all sure of the spelling of his last name; it could be "Chrein" or "Clein"), a white Caucasian male, to whom plaintiff made one or more reports of sexual harassment but plaintiff does not consider his responsive action adequate. The specifics of her report or reports to Klein are either not set out or are set out too illegibly for me to know what they are, although plaintiff asserts that they "clearly suggested sexual harassment."

3. Plaintiff attended a four-day training seminar. There were, at least, three people at the seminar: a "Chinese/Korean female;" an "unknown, unauthorized male individual" who plaintiff observed on two occasions; and an "older civilian male employee of the federal funding organization." All participated in harassment that is not described or legible, except as set forth below.

4. The "Chinese/Korean" female engaged in "persistent and inappropriate" conduct during the seminar, although I cannot discern any specifics about this conduct. The "older male civilian" made a comment about someone's breast size, perhaps

referring to plaintiff. Klein's report in response to plaintiff's complaint to him only addressed the "older male civilian."

5. The "Chinese/Korean female" was terminated after a "bizarre" "fugitive-like chase of her across the airport" involving "injury to law enforcement officers."

6. An "African-American male," possibly one of the three individuals who attended the seminar, circulated "untruths in the workplace" that "he sleeps with me."

7. Klein falsely accused plaintiff of making "highly sex charged statements." Klein himself was a participant in the sexual harassment, although there is no description of what he did or what the harassment was.

8. Much of plaintiff's complaint stems from statements by Klein or defendant in response to her EEOC administrative claim, which plaintiff considers false, but there are no legible specifics set forth.

9. Klein referred to plaintiff's complaints as "delusional" to others in the company, and perhaps to the EEOC. She thinks she is a calm person who has never had a problem in the workplace before. Plaintiff was terminated for disruptive behavior but plaintiff disputes engages in such behavior.

10. Her co-workers, consisting at least of two younger, female peers, sent emails also accusing her of this but they are false. Plaintiff has not seen these emails.

11. In response to her filing her EEOC claim, defendant tried to ostracize her from the workplace but she did not feel ostracized.

12. Plaintiff has a "perceived disability," but the complaint does not identify what it is, at least not legibly.

13. Klein discriminated against plaintiff because of her age by not considering it in evaluating her sexual harassment complaint.

Even given the liberal standard of construction for a *pro se* complaint, plaintiff's pleading fails to state a claim. My prior Order expressly instructed her that she could not just use labels like "sexual harassment," "hostile work environment," or "inappropriate conduct" but instead had to explain who did what to whom. She has added virtually no factual allegations to address that problem but has instead continued the vague allegations and conclusions from her first complaint. All that she has added is that someone, probably not even an employee of defendant, said something about the size of someone's breast and plaintiff believes the investigation of that, and whatever other complaints she made but has not described in any detail, were stacked against her and used to terminate her.

I have considered especially whether plaintiff might have a claim for retaliation as the allegations that I can read seem closest to suggesting that claim. But a retaliation claim requires protected activity, and while a report of illegal conduct to a supervisor might constitute protected activity, it depends on the content of the report. Despite two chances, plaintiff only has provided me with labels, not facts.

I note that plaintiff has now twice requested appointment of counsel. There is no right to counsel in a civil case. It is tempting to appoint counsel just to shift the burden of advising plaintiff how to tell her story to someone else and seeing if an attorney could connect her disconnected conclusions into an actionable claim. However, because the availability of counsel to handle such matters is limited, the Court has to make a judgment as to whether, among other things, there is enough merit in a claim to warrant depletion of that resource. See generally

Hodge V. Police Officers, 802 F.2d 58 (2d Cir. 1986). I cannot justify the appointment of counsel when plaintiff's pleadings have given no indication that the claim has any merit.

I am further resisting the temptation to compel defendant to respond to the amended complaint in the hope of getting a more complete picture of the nature of plaintiff's dispute. Section 1915 of Title 28, United States Code, is not just to allow a *pro se* plaintiff to file without costs, but to prevent the imposition of the cost of litigation on defendants where a *pro se* plaintiff cannot articulate a claim. See generally McDowell v. Moore, 635 F. Supp. 280, 282 (W.D.N.C. 1986) ("it is the intent of the in *forma pauperis* proceedings that the indigent be provided equal access to the courts for justice, not a superior access in order to use the courts for the harassment and abuse of those who are paying for their legal representation and taking time from other duties"). A *pro se* plaintiff is not charged with knowing any law at all, but she must be able to relate a coherent factual description of events so that the Court can determine if those events are actionable when the law is applied. Here, plaintiff has chosen to continue to use labels rather than allege facts even though she was advised not to in the prior Order.

I have determined not to give plaintiff leave to amend a second time because I do not think any further effort will result in a comprehensible statement of the events. As noted, one of the purposes of 28 U.S.C. § 1915 is to relieve the Court of undue burden from a meritless claim. The burden of deciphering plaintiff's submissions has been substantial. It literally takes hours, and during that time, the Court is unable to address other cases, *pro se* and otherwise, which present viable claims.

Accordingly, the amended complaint is dismissed pursuant to 28 U.S.C. § 1915 for failure to state a claim. The second motion to appoint counsel is denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and

therefore *in forma pauperis* status is denied for the purpose of any appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                                                               U.S.D.J.

Dated: Brooklyn, New York
      May 13, 2017